## BEFORE THE UNITED STATES JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

_____
                                                )
IN RE: VOLKSWAGEN "CLEAN DIESEL"                )
MARKETING, SALES PRACTICES, AND                 )        MDL DOCKET NO. 2672
PRODUCTS LIABILITY LITIGATION                   )
_____ )

## PLAINTIFF DANIEL CARROLL'S RESPONSE
## IN SUPPORT OF TRANSFER OF RELATED ACTIONS TO THE
## EASTERN DISTRICT OF MICHIGAN FOR
## CONSOLIDATED PRE-TRIAL PROCEEDINGS

Daniel Carroll ("Carroll"), plaintiff in *Daniel Carroll et al. v. Volkswagen Group of America, Inc.,* Civ. Ac. No. 2:15-cv-13360-GER-APP (E.D. Mich.) (filed Sept. 23, 2015) (the "Carroll Action"), hereby files this Response in Support of the Motion to Transfer of Related Actions to the Eastern District of Michigan for Consolidated Pre-Trial Proceedings.

### I.      BACKGROUND

This case challenges Volkswagen's marketing and sales of "Clean Diesel" engine technology.  Volkswagen's engineers and software programmers in Germany designed and incorporated "defeat devices" in millions of Volkswagen and Audi automobiles worldwide, allowing those automobiles to secretly cheat engine emission tests, while covertly accepting engine nitrogen oxide emission levels 40 times the EPA-permitted limit and completely ignoring the task so heavily marketed – the design and manufacture of genuinely clean engines. Such engineering would have been a laudable achievement – and Volkswagen heavily marketed and sold that supposed achievement to consumers.

The reality, as announced by the EPA is that those vehicles contain a sophisticated software algorithm that detects when the car is undergoing official emissions testing, and turns full emissions controls on only during the test. Recent developments have seemingly confirmed that this is a worldwide problem emanating from Volkswagen's German base of operations. Given the hundreds of case filings, consolidation is appropriate and seemingly inevitable. The task at hand is to find the most appropriate American forum for Volkswagen's German-based fraud.

They call Detroit the "Motor City" for a reason. Once the world's car maker, Detroit remains home to the three major automobile manufacturers and the myriad of automotive suppliers that support nearly every major manufacturer, foreign and domestic. Naturally, the Motor City's federal court is a subject-matter expert in automotive litigation, a trait mirrored by its Chief Judge, the Hon. Gerald E. Rosen, to whom these Volkswagen cases have been assigned. As discussed herein, the Eastern District of Michigan (the "District") is the most appropriate forum because (1) the District and Judge Rosen are experienced in complex automotive and multidistrict litigation; (2) the District is the center of gravity of the automotive industry in the United States and therefore home to institutions, organizations, and experts that are important in this litigation; (3) the District is centrally and conveniently located; and (4) no other venue is likely to possess a greater interest or connection to this litigation outside of Germany.

## II.     ARGUMENT

### A.  Consolidation of this Litigation is Appropriate

Plaintiff Carroll submits that the Eastern District of Michigan is the appropriate venue for consolidation of this litigation.  Relevant factors for analyzing the appropriate venue include: (1) the district where the largest number of cases are pending; (2) the district of the occurrence of common facts; and (3) the district where critical documents and witnesses are located. *In re Stryker Rejuvenate, ABG II Hip Implant Prods. Liab. Litig.*, 949 F. Supp. 2d 1378, 1380 (J.P.M.L. 2013) (district where plurality of cases pending was appropriate transferee court); *In re TJX Cos., Inc., Customer Data Sec. Breach Litig.*, 493 F. Supp. 2d 1382, 1383 (J.P.M.L. 2007) (district where defendant was located and many cases had already been filed was appropriate transferee court); *In re Ivy*, 901 F.2d 7, 9 (2d Cir. 1990) (the district most convenient to the parties and witnesses was appropriate transferee court); Manual for Complex Litigation (Fourth) § 20.131.

Given the overlapping nature of the cases involved in this litigation, Plaintiff believes that centralization before a single judge is appropriate. All of these related actions satisfy the statutory requirements for transfer under Section 1407 because they involve one or more common questions of fact. Transfer of these cases will also be for the convenience of the parties and witnesses, and will promote the just and efficient conduct of these actions. Specifically, transfer and consolidation of these related cases is appropriate because the cases involve significant common questions of fact concerning the fraudulent nature of Defendants' omissions and the deceptive practices surrounding Defendants' promotion and advertising of their "Clean Diesel" engine technology. As a

result, absent pretrial coordination or consolidation of these cases, Defendants and relevant non-parties could potentially be forced to respond to identical discovery responses, seeking the same information and documentation, and to produce the same witnesses for separate depositions in each case. Similarly, absent transfer and coordination or consolidation before a single court, different judges may reach conflicting decisions regarding critical issues—including class certification—which could, in turn, lead to inconsistent results. Transfer and consolidation, thus, would best serve the convenience of the parties and witnesses, and promote the just and efficient conduct of these actions.

## B. The Eastern District of Michigan is the Appropriate Venue for Transfer and Consolidation of all the Related Actions

Current reports in the media and disclosures from governmental regulators indicate that the occurrence of the common facts and many of the witnesses and evidence are likely based in Germany and other European countries such as Hungary and Slovakia. The international scope of this case likely discounts the value of other geographic factors such as the location of Volkswagen's nominal U.S. headquarters where few documents likely exist.    Likewise, Volkswagen is currently subject to state and federal investigations across the United States, a factor that favors no particular forum.  Indeed, no domestic forum is likely able to claim priority based on the location of case-specific witnesses or documents, a factor that should be further discounted given the availability of e-discovery and the ability to review and code the same anywhere in the world.

The Eastern District of Michigan, based in Detroit, is the center of gravity of the automobile industry in the United States. As indicated by the discussion below on Judge Rosen's extensive experience, the Eastern District of Michigan's skill and expertise in automotive litigation is unrivaled. For this and other reasons, the Eastern District of Michigan is the most appropriate venue for consolidated pre-trial proceedings.

This Panel recently recognized the District's automotive expertise in transferring the *In Re Automotive Parts Wire Harness System Antitrust Litigation* to the Eastern District of Michigan in 2012. *Id.*, 867 F. Supp. 2d 1349, 1350 (J.P.M.L. 2012). The District regularly manages other complex litigation and has the resources to effectively manage this case in an efficient and timely manner. Likewise, every automobile manufacturer, including Volkswagen, is an experienced litigant in the District. *See, e.g., Serv. Reminder, LLC v. Volkswagen Group of Am., Inc.*, 2011 U.S. Dist. LEXIS 112542, *25 (E.D. Mich. Sept. 29, 2011) (granting Volkswagen's motion to dismiss). Lastly, this litigation will undoubtedly require the assistance of automotive experts, research, reports, and other information that is generated by institutions and organizations based in the Eastern District of Michigan, including the Center for Automotive Research and the University of Michigan's Transportation Research Institute in Ann Arbor, Michigan.

### C. Chief Judge Gerald Rosen Has Significant Experience in Automotive and Multidistrict Litigation and is the most Appropriate Judge for the Consolidated Cases

After consolidation, Plaintiff requests that the Panel consider assigning this litigation to the Honorable Gerald E. Rosen, Chief Judge of the U.S. District Court of the

Eastern District of Michigan.  Judge Rosen, a well-respected jurist, was assigned the first of the related cases in the Eastern District of Michigan and, as the low-numbered judge, all future case filings in the Eastern District of Michigan will likely be assigned to him. Among the factors to be considered in determining which judge should be designated by the Panel are the location of currently pending cases and a given judge's current caseload. *See* Manual for Complex Litigation (Fourth) § 20.131.  Since Judge Rosen has been assigned more Volkswagen cases in the Eastern District of Michigan than any other judge, it would be entirely appropriate for the Panel to designate him as the judge for the consolidated Volkswagen cases.

U.S. District Judge Gerald E. Rosen has served as a federal judge for more than 25 years and has served as the Chief Judge of the Eastern District of Michigan since January 1, 2009. While he currently has no MDLs assigned to him, this Panel has previously recognized Judge Rosen's skill as a jurist in transferring no less than three multidistrict litigations to Judge Rosen: (1) *In re Rio Hair Naturalizer Prods. Liab. Litig*., 904 F. Supp. 1407, 1408 (J.P.M.L. 1995); (2) *In re Delphi Corp. Secs., Derivative & "ERISA" Litig*., 403 F. Supp. 2d 1358, 1360 (J.P.M.L. 2005); and (3) *In re GMC Secs. & Derivative Litig*., 429 F. Supp. 2d 1368, 1370 (J.P.M.L. 2006).  Judge Rosen effectively managed all three assignments.  In *In re Delphi Corporation Securities, Derivative & ERISA Litigation*, Judge Rosen ably managed multidistrict litigation involving an automotive supplier that had filed for bankruptcy protection, ultimately granting final approval of a nationwide class action settlement less than three years after the proceeding was assigned to him by this Panel. *In re Delphi Corp. Sec.*, 248 F.R.D. 483, 493 (E.D.

6

Mich. 2008).  There is no doubt that Judge Rosen would be an experienced transferee judge with the ability to handle these complex proceedings.

Judge Rosen also has significant experience, both as a lawyer and a judge, in litigating and managing important, high-profile cases.   This litigation has already generated a significant amount of media coverage and will likely continue to do so as new developments occur.  "During his tenure on the federal bench, Judge Rosen has had wide experience in facilitating settlements between parties in a great many cases, including highly complex and challenging multi-district litigation cases and class actions, and most recently as the chief judicial mediator for the Detroit Bankruptcy case, the largest municipal bankruptcy in our nation's history."[1]  More recently, U.S. Bankruptcy Judge Steven Rhodes recently appointed Judge Rosen as the mediator in the Detroit bankruptcy case, where he resolved key disputes between the city and its creditors in what was termed the "grand bargain."[2]  His involvement helped "bring[] to a close the largest municipal bankruptcy in American history after about 17 months."[3] Given the magnitude of this case, a potential bankruptcy reorganization of Volkswagen is certainly possible and Judge Rosen's experience as the mediator in the Detroit bankruptcy and involvement in other automotive bankruptcies provides unique experience.  This high-profile experience is further complemented by Judge Rosen's experience in managing complex automotive litigation, including automotive-related multidistrict litigation.  *See,*

---

[1] http://law.wayne.edu/profile/gerald.rosen/

[2] http://www.deadlinedetroit.com/articles/7464/meet_gerald_rosen_the_federal_judge_who_is_trying_to_save_detroit#.VgsJC7Q-BBw

[3] http://www.nytimes.com/2014/12/11/us/detroit-bankruptcy-ending.html?_r=0

*e.g., In re Delphi Corp. Secs., Derivative & "ERISA" Litig.*, 403 F. Supp. 2d 1358, 1360 (J.P.M.L. 2005); *In re GMC Secs. & Derivative Litig.*, 429 F. Supp. 2d 1368, 1370 (J.P.M.L. 2006).   By centralizing this litigation before Judge Gerald Rosen, this Panel would be "selecting a jurist well-versed in the nuances of complex [] litigation to steer this controversy on a prudent course." *In re Aluminum Warehousing Antitrust Litig.*, 988 F. Supp. 2d 1362, 1363 (J.P.M.L. 2013).

### D. The Eastern District of Michigan has the Capacity to Accept this Assignment

As the Panel noted in *In re Phenylpropanolamine (PPA) Products Liab. Litig.*:

> In concluding that the Western District of Washington is the appropriate forum for this docket, we note that centralization in this district permits the Panel to effect the Section 1407 assignment to a major metropolitan court that i) is not currently overtaxed with other multidistrict dockets, and ii) possesses the necessary resources to be able to devote the substantial time and effort to pretrial matters that this complex docket is likely to require.

173 F. Supp. 2d 1377, 1379-80 (J.P.M.L. 2001). The Eastern District of Michigan has a proven track record in handling its case load expeditiously.

As of September 15, 2015, the Eastern District of Michigan is underrepresented in multidistrict litigation with only three MDLs pending before its 24 U.S. District Judges. This Panel has recognized that a more open MDL docket supports centralization in a particular district.   *See*, *e.g.*, *In re Listerine Total Care Mouthwash Mktg. and Sales Practices Litig.*, 764 F. Supp. 2d 1354, 1355 (J.P.M.L. 2011).   In contrast, the Southern District of New York has 35 pending MDLs; the Central District of California has twelve pending MDLs; and the Northern District of California has eighteen pending MDLs.

**E. This Kind of National Litigation Favors a Central, Convenient, and Accessible Forum**

Keeping in mind that centralization almost always poses an inconvenience to some participants, the Panel should consider the convenience of the parties to the litigation as a whole. *See* 28 U.S.C. § 1407(a) (Panel may transfer related actions upon "its determination that transfers . . . will be for the convenience of the parties and witnesses . . . ."). The Eastern District of Michigan is based in Detroit, Michigan, which is well served as a transportation hub. "With national litigation of this type it is sometimes necessary to transfer the cases to a more central location." *In re Butterfield Patent Litigation*, 328 F. Supp. 513 (J.P.M.L. 1970).

This Panel has previously determined that "the Eastern District of Michigan provides a geographically central location for [] nationwide litigation." *In re Rio Hair Naturalizer Prods. Liab. Litig.*, 904 F. Supp. 1407, 1408 (J.P.M.L. 1995). Additionally, the Detroit Metropolitan Wayne County Airport is the nation's 18th busiest airport and is home to eleven different airlines with direct flights to 115 domestic destinations.[4] It is the second-largest hub for the world's largest airline, Delta, and also serves as a hub for Spirit Airlines. In sum, the Eastern District of Michigan serves as a convenient forum to the evidence, parties and witnesses.

---

[4]    http://archive.freep.com/article/20120527/COL21/205270322/Airlines-at-Detroit-Metro-Airport-have-plernty-of-nonstop-flights

## III.    CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that this Panel consolidate all related actions pursuant to 28 U.S.C. § 1407 and transfer them to the Eastern District of Michigan before the Hon. Gerald E. Rosen.

Respectfully submitted,

ZIMMERMAN REED, LLP

Dated: September 30, 2015    By:    s/ Charles S. Zimmerman
Charles S. Zimmerman, MN Bar No. 120054
Brian C. Gudmundson, MN Bar No. 336695
Jason R. Lee, MN Bar No. 396847
1100 IDS Center
80 South 8th Street
Minneapolis, MN  55402
(612) 341-0400 Phone
(612) 341-0844 Facsimile
charles.zimmerman@zimmreed.com
brian.gudmundson@zimmreed.com
jason.lee@zimmreed.com

ZIMMERMAN REED, LLP
Hart L. Robinovitch, AZ Bar No. 020910
14646 N. Kierland Blvd., Suite 145
Scottsdale, AZ 85254
(480) 348-6400 Phone
(480) 348-6415 Facsimile
hart.robinovitch@zimmreed.com

ZIMMERMAN REED, LLP
Caleb Marker, MI Bar No. P70963
555 E. Ocean Blvd., Suite 500
Long Beach, CA 90802
(877) 500-8780 Phone
(877) 500-8781 Facsimile
caleb.marker@zimmreed.com

*Attorneys for Plaintiff Daniel Carroll*